# LAW OFFICE OF BERNARD V. KLEINMAN, PLLC

## ATTORNEY - AT - LAW

2 GANNETT DRIVE, SUITE 418

WHITE PLAINS, NY 10604

TEL: (914) 644-6660     E-MAIL: ATTRNYLWYR@YAHOO.COM     FAX: (914) 694-1647

December 1, 2013

Hon. Lewis A. Kaplan
U.S. District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: United States v. Anas al Liby, S10 98-cr-1023 (LAK)

Your Honor,

On October 22, 2013, the Court directed that it receive "written submissions by December 1 from everybody on the joint trial proposal [of the Government]." Hg. Transcript of Oct. 22, 2013 at p. 18, ll. 11-12.

Prefatory to the Defendant al Liby setting forth his position on this issue, and notwithstanding the Court's stated inclination to consolidate the trials of Mr. al Liby with that of Messrs. Al Fawwaz and Adel Bary (*ibid*), Counsel would wish to make clear to the Court that certain factors need to be noted by the Court with regard to Mr. al Liby's representation. First of all, while Counsel has received the bulk of the unclassified discovery from the Government, this has been delivered in the form of approximately 34 DVDs, and two separate hard drives. In addition, last week Counsel spoke with the attorney for the Government who informed him that additional unclassified discovery was being provided. This, of course, is exclusive of the classified discovery which has yet to be provided to Counsel. It should be obvious that Counsel has barely skimmed the surface in the review of this documentation, and is still in the process of organizing both staff and facilities in order to prepare a proper defense.

Furthermore, the Government has made clear to Counsel that it will be seeking a *Curcio* Hearing before this Court to determine if there exist any conflicts that would bar Counsel from representing Mr. al Liby, and whether Mr. al Liby is willing to waive any such conflict(s). While counsel has had discussions with the Government as to the possible basis for any such conflict, Counsel will leave it to the Government to set these forth at the appropriate time and in the appropriate manner (notwithstanding Counsel's verbal assertions to the Government that no such conflicts exist).

Hon. Lewis Kaplan, U.S.D.J., S.D.N.Y.
Re: United States v. al Liby, 98-cr-1023
01 December 2013 – page two

That being said, as to the issue of consolidating the trial of Mr. al Liby with that of Messrs. Al Fawwaz and Abdel Bary, the short answer is that Mr. al Liby opposes any such consolidation.

It is the Government's position that the trials of these three defendants ought to be consolidated on the basis that many, if not all, of the same witnesses will appear at the same trials, that judicial economy and efficiency clearly militate in favor of such a consolidation, and that there exist no extraordinary reasons for not consolidating the trial of Mr. al Liby with that of Messrs. al Fawwaz and Abdel Bary.  Before addressing these issues, and the particular issues of Defendant al Liby's case, it is Counsel's position that there exist no exigent circumstances as to why this important, and possibly decisive, issue ought to be determined at this point in time.  The Court must certainly recognize that with motions based upon the unclassified discovery preliminarily due on or before May 1st, 2014,[1] and any motions premised upon the classified CIPA material due sometime thereafter, no trial could reasonably be assumed before, at a minimum, at least a year hence.

Thus counsel would request that the Court reserve decision on this issue and djourn the matter *sine die*.

The Defendant Mr. al Liby is charged in Count 1 of the superseding indictment with Conspiracy to Kill U.S. Nationals in violation of 18 U.S.C. §§ 1116(b)(4), 2332(b).  Also included, relevant hereto, in this Count are Defendants al Fawwaz and Abdel Bary.  The Overt Acts delineated in support of this Count run to approximately fifty pages.  Mr. al Liby is referenced in only three separate Overt Acts as follows:

---

[1] Counsel should point out to Your Honor that when the Court inquired of Counsel as to how much time would be needed to review, digest and fully analyze the unclassified discovery, and prepare motions, Counsel qualified his response be setting forth a minimum period of six months, *viz.*,

> THE COURT: Assuming that you get the unclassified discovery by December 1, Mr.
> Kleinman, how much time do you need for motions?
>
> MR. KLEINMAN:  Judge, if I get the material by December 1, I would need -- I can imagine I would need at least six months to go through the discovery.  Mr. Lewin is talking about 270,000 documents to review.  And my client does not speak English, so I have to use the services of an interpreter for discussing a lot of issues with him.
> So to wade through that material and determine what motions should be made, Judge, at least six months.

Hg. Transcript of 10/22/2013 at p. 10, ll. 9-18.  Emphasis added.

Counsel would be loathe to, at this still early time period, to be bound by this six month time frame, especially as Counsel's defense will entail significant travel abroad.

Hon. Lewis Kaplan, U.S.D.J., S.D.N.Y.
Re: United States v. al Liby, 98-cr-1023
01 December 2013 – page three

ee. Beginning in the latter part of 1993, ANAS AL LIBY and other members of al Qaeda discussed with Ali Mohamed, named as a co-conspirator but not as a defendant herein, a possible attack against the United States Embassy in Nairobi, Kenya, in retaliation for the United States' participation in Operation Restore Hope in Somalia;

ff. In or about the latter part of 1993, defendant ANAS AL LIBY and Ali Mohamed, named as a co-conspirator but not as a defendant herein, conducted visual and photographic surveillance of the United States Embassy in Nairobi, Kenya;

gg. In or about 1994, defendant ANAS AL LIBY, together with other members of al Qaeda and Ali Mohamed, named as a co-conspirator but not as a defendant herein, reviewed files concerning possible terrorist attacks against: (i) the United States Embassy in Nairobi, Kenya; (ii) the building then housing the United States Agency for International Development in Nairobi, Kenya; and (iii) British, French and Israeli targets in Nairobi, Kenya; the United States Agency for International Development in Nairobi, Kenya; and (iii) British, French and Israeli targets in Nairobi, Kenya; . . .

As can be seen, the Government's case rests upon an alleged series of acts committed by Mr. al Liby over, at best, a six month period running from "the latter part of 1993" to "[i]n or about 1994". No actions are alleged to have been committed by Mr. al Liby after this time period, which was more than four years prior to the actual bombings of the U.S. Embassies in August 1998. In addition, thereto, Mr. al Liby is only alleged to have been involved in "discussions", "surveillance", and "review[ing] files" in the bombing of the Embassy in Nairobi, and not the Embassy in Dar es Salaam, Tanzania.[2]

Based upon the above-referenced, limited Overt Acts, Mr. al Liby is further charged in Count 2 with Conspiracy to Murder, Kidnap and Maim at Places Outside the United States (18 U.S.C. §§ 1116(b)(4), 956(a)(1), (a)(2)(A)), Count 3 with Conspiracy to Commit Murder (18 U.S.C. §§ 1114, 1116, 1117), Count 5 with Conspiracy to Destroy Buildings and Property of the United States (18 U.S.C. §§ 844(f)(1), (f)(3), (n), and Count 6 with Conspiracy to Attack National Defense Utilities (18 U.S.C. §§ 2155(a), (b)).

What Mr. al Liby is not charged with is Count 4, Conspiracy to Use Weapons of Mass Destruction, Counts 7 and 8, which are the actual Africa Bombings that resulted in the

---

[2] While Overt Act "gg" references alleged possible terror attacks against other facilities (the U.S. A.I.D. office in Nairobi, and British, French and Israeli government facilities in Nairobi) there is no evidence presented that any of these facilities were ever actually attacked, or any specific actions were taken with regard to these facilities.

Hon. Lewis Kaplan, U.S.D.J., S.D.N.Y.
Re: United States v. al Liby, 98-cr-1023
01 December 2013 – page four

deaths of over 213 persons in Nairobi, Kenya, and the deaths of 11 persons in Dar es Salaam, Tanzania, Counts 9 and 10, the Use or Attempted Use of a Weapon of Mass Destruction in, respectively, Nairobi and Dar es Salaam.  In addition, Counts also covered the Murder and Attempted Murder of U.S. Nationals in both Nairobi and Dar es Salaam.

These additional counts are premised upon the Overt Acts as laid out in Count One. Significantly, while, as set forth above, Mr. al Liby's alleged connection to these acts ended at least four years before the commission of the events, both Messrs. al Fawwaz and Abdel Bary had much, much more extensive contact with both the conspiracy and actual Bombings themselves.

In determining whether it is appropriate to consolidate the trial of Mr. al Liby with both Mr. Abdel Bary and Mr. al Fawwaz, it is essential to compare both the Overt Acts in Count One, and the other Counts in the charging instrument in which the latter two defendants are charged — in other words what will the Government seek to prove at trial.

Mr. Abdel Bary is named as having been appointed the head of Egyptian Islamic Jihad[3] by co-defendant Ayman al Zawahiri[4] in 1996.  See Overt Acts at uu.  In March 1997 he allegedly leases the Beethoven Street location in London.  See Overt Acts at nnn.  Six months later that same apartment is leased again by Mr. al Fawwaz, with Mr. Abdel Bary being present.  *Id*. at rrr.  The next month Mr. al Zawahiri is asked to telephone the cell phone of Mr. Abdel Bary.  *Id*. at aaaa.  From January 1998 until September 1998 (one month after the East Africa Bombings) Mr. Abdel Bary leases the Beethoven Street office in London.  *Id*. at ffff.  Allegedly, in preparation for the bombings, the Government asserts that Mr. Abdel Bary and a co-defendant engaged in the fabrication of false travel documents to facilitate travel to East Africa.  *Id*. at uuuu.  One month before the bombings Mr. Abdel Bary is allegedly "reaffirm[ing] his commitment, . . ., to the general objectives of the Egyptian Islamic Jihad and to follow all orders of the Egyptian Islamic Jihad leadership."  *Id*. at mmmm.  Then, only four days before the bombings, Egyptian Islamic Jihad issues a threat to retaliate against the United States, that is received by Mr. Abdel Bary at the Beethoven Street office.  *Id*. at nnnnn.  Then, on the day before and the day of the Bombings, Mr. Abdel Bary, with a co-defendant, is charged with the "dissemination of claims of responsibility for the bombings of the American embassies . . ."  *Id*. at rrrrrr.

---

[3] The "Background", as set forth in the Indictment, describes Egyptian Islamic Jihad as, in February 1998, having "merged with al Qaeda."  See Indictment at Introduction, ¶ 4.

[4] Mr. al Zawahiri is named as not only being the head of Egyptian Islamic Jihad (see *id*. at ¶ 4), but also as sitting on the "consultation council" of al Qaeda.  *Id*. at ¶ 6.

Hon. Lewis Kaplan, U.S.D.J., S.D.N.Y.
Re: United States v. al Liby, 98-cr-1023
01 December 2013 – page five

Thus, co-defendant Abdel Bary is placed, by the Government, at or near the very epi-center of the Bombings dating from 1996 until the very day of the event.  This ought to be compared with the allegations against Mr. al Liby which limit his connection to the Embassy Bombings to a brief period more than four years before the event.

In addition, thereto, unlike Mr. al Liby, Mr. Abdel Bary is charged in Counts 4, 7, 8, 9 and 10 — all Counts in which Mr. al Liby is <u>not</u> named.

As to co-defendant al Fawwaz, he is named as having, along with Osama bin Laden, set up a London media office, in 1994 as a cover for al Qaeda's military actions.  See Indictment at Introduction, ¶ 9.  See also Overt Acts at jj.  However, even before that the Government claims that Mr. al Fawwaz, acting as a member of al Qaeda, established offices in Nairobi.  Overt Acts at u.[5]  In 1995 Mr. al Fawwaz is accused of providing communications equip-ment to co-defendant bin Laden, and that this activity continued at least until 1998.  *Id.* at qq.  The Indictment goes on to charge this co-defendant with maintaining computers in his residence in England containing numerous al Qaeda related documents including messages from bin Laden and fatwahs.  *Id.* at ww. thru zz.  Further allegations place Mr.al Fawwaz at the center of planning regarding al Qaeda cells in East Africa.  See *id.* at uuu., vvv.  Mr. al Fawwaz was further charged with the publication of various fatwahs against the United States within three months of the bombings.  *Id.* at llll., mmmm.

Thus, unlike Mr. al Liby, Mr. al Fawwaz is charged with direct al Qaeda connections, at the highest levels, going back as far as 1993 and continuing on through the actual Embassy Bombings.

As can be seen from the above, the Government claims that Mr. al Liby's direct connec-tion to the events of August 1998 effectively ended in early 1994.  This compares starkly with the allegations against Messrs. Abdel Bary and al Fawwaz whose connection to the Bombings lasted for many years and ended with the actual bombings themselves.  Further-more, while both Mr. al Fawwaz and Mr. Abdel Bary are alleged to have direct connections to Mr. bin Laden, no such claims are put forth as to Mr. al Liby.

The prejudicial danger in trying Mr. al Liby with Messrs. Abdel Bary and al Fawwaz should be clear.  It is the position of the Defendant that in the hearts and minds of the jury he will be lumped together with his co-defendants and thereby highly prejudiced by any spillover effect.[6]  See generally *United States v. Figueroa*, 976 F.2d 1446 (1st Cir. 1992), *cert.*

---

[5] According to the *9/11 Commission Report* "Bin Ladin had dispatched . . ., Khaled al Fawwaz, to serve as the on-site Manager [in Nairobi]."  *Id.* at p. 68.

[6] How this evidence can be viewed, from the perspective of jury prejudice, is as the Eighth Circuit has described it,

Hon. Lewis Kaplan, U.S.D.J., S.D.N.Y.
Re: United States v. al Liby, 98-cr-1023
01 December 2013 – page six

---

*denied* 507 U.S. 943 (1993). Counsel, needless to say, recognizes that this issue has been litigated before the Court in the context of Mr. al Fawwaz's opposition to being jointly tried with Mr. Abdel Bary. See *United States v. al Fawwaz*, 2013 WL 3111043 (S.D.N.Y. 2013). There, Mr. al Fawwaz set forth, as Mr. al Liby does now, the danger inherent in trying Mr. al Fawwaz with Mr. Abdel Liby, based upon, among other grounds, the disparity in charges and Overt Acts that differentiate these two defendants. The Court rejected this argument on the basis that "although Al Fawwaz is not charged in any of the substantive counts, the evidence underlying those counts is likely to be admissible against him." *Id*. at *2.

It is the position of Mr. al Liby that there exist far more differences than there were between Messrs. Abdel Bary and al Fawwaz. And, that the evidence to be presented against both of these defendants, including but not limited to their direct connections to both Osama bin Laden and al Qaeda, and the planning and execution of the Embassy Bombings up to and through August 1998, as compared with Mr. al Liby's extremely limited connec- tion to the conspiracy (with no connections alleged after early 1994) make any spillover effect not only obvious, but certainly not remediated by any limiting instructions.

One thing that cannot be ignored that unlike the typical multi-defendant drug conspiracy, or organized crime case, this case involves issues much more tinged with emotion and trauma than other cases. The fact that Mr. al Liby will be tried in New York, barely a half-mile from the World Trade Center site, and that Osama bin Laden and al Qaeda will be referenced numerous times in connection with his co-defendants cannot be ignored. While limiting instructions to juries may suffice ordinarily (see *Weeks v. Angelone*, 528 U.S. 225, 234, *reh'g denied* 529 U.S. 1013 (2000) ("A jury is presumed to follow its instructions.")), this is certainly anything but the "ordinary" case. And, of course, Counsel is well aware of the oft cited principle, that "[t]he fact that evidence may be admissible against one defendant but not against another <u>does not necessarily</u> require a severance." *United States v. Carson*, 702 F.2d 351, 367 (2d Cir.), *cert. denied sub nom. Mont v. United States*, 462 U.S. 1108 (1983) (Emphasis added.). Furthermore, as the Government has pointed out in its letter to the Court, judicial efficiency and preservation of scarce judicial resources will generally militate in favor of a joint trial. See *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). Nevertheless, one cannot sacrifice undue prejudice and an unfair trial in the interests solely of "conservation of time, money and scarce judicial resources that [a] joint trial permits." *United States v. Jimenez*, 824 F. Supp.2d 321, 366

---

Prejudice can be demonstrated by showing that the jury will be unable to compartmentalize the evidence as it relates to the separate defendants because of a "prejudicial spillover effect." . . .

What is required for a severance is a specific showing that a jury could not reasonably be expected to compartmentalize the evidence.

*United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006) (Citations omitted.).

Hon. Lewis Kaplan, U.S.D.J., S.D.N.Y.
Re: United States v. al Liby, 98-cr-1023
01 December 2013 – page seven

(S.D.N.Y. 1993).  While the decision regarding joinder is committed to the informed discretion of the trial court (*United States v. Diaz*, 176 F.3d 52, 102 (2d Cir. 1999)), if the defendant can overcome his admittedly "heavy burden to show prejudice", then such a request ought to be granted.  *United States v. Ferguson*, 676 F.3d 260, 286-87 (2d Cir. 2011).

In *Kotteakos v. United States*, 328 U.S. 750 (1946), the Supreme Court recognized that spillover prejudice is possible where defendants are tried jointly, in a complex case, "but have markedly different degrees of culpability".  *Id.* at 774-75.  Although the three defendants here are charged in the same conspiracy count (Count One of the indictment), the degrees of culpability, by the Government's own recitation of Overt Acts, is clear and unmistakable.  Compare *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998), *cert. denied sub nom. Abouhalima v. United States*, 525 U.S. 1112 (1999) (spillover prejudice deemed "an unlikely occurrence when all the defendants are charged under the same conspiracy count.").

Under these circumstances, as set forth above, Defendant al Liby would oppose the Government's request for a joint trial.[7]

Respectfully submitted,

/s/ *Bernard V. Kleinman*
Bernard V. Kleinman
Attorney for Defendant AL LIBY

cc:  All Counsel via ECF

---

[7] It should be noted that Defendant al Liby reserves the right to raise the issue of severance, under F.R.Crim.P. Rule 14(a), by way of motion, at such later time as the discovery discloses further and reasonable bases for such a motion.