UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

                    -against-                                    S10 98 Crim. 1023 (LAK)

ANAS AL LIBY,

                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Sean S. Buckley
Stephen J. Ritchin
Adam J. Fee
Nicholas Lewin
Assistant United States Attorneys
Preet Bharara
UNITED STATES ATTORNEY

Bernard V. Kleinman
LAW OFFICE OF BERNARD V. KLEINMAN, PLLC
*Attorney for Defendant Anas al Liby*

LEWIS A. KAPLAN, *District Judge.*

Anas al Liby, an alleged member of al Qaeda, is charged with, among other things,

conspiring with Usama Bin Laden and others to kill Americans abroad by, among other means,

bombing the United States embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania, bombings

in which 224 people reportedly were killed and many more injured.  A fugitive for many years, al

Liby recently was apprehended in Libya[1] and produced in this Court for prosecution on the indictment. Al Liby now moves to dismiss the indictment for lack of jurisdiction on the grounds that his apprehension and treatment prior to being presented to this Court violated (1) the *Ker-Frisbie* doctrine, (2) the Posse Comitatus Act, and (3) international treaties.

The basis of the motion is a declaration from al Liby's attorney alleging the following facts "upon information and belief."[2] There is no claim that counsel has personal knowledge of any of the matters discussed.

On or about October 5, 2013, Delta Force operatives of the U.S. Army "forcibly removed" al Liby from his vehicle outside his home in Tripoli, Libya "with the use of extreme physical and brutal force."[3] "After using tazer-like [*sic*] weapons," the operatives blindfolded al Liby, prevented him from hearing, and "bound, gagged and trussed [him] up."[4] Al Liby purportedly was "forcibly removed" to a site in or around Tripoli and then transported to the U.S.S. San Antonio, a naval vessel.[5] His attorney alleges also that al Liby was "subjected to daily interrogation" by CIA and other U.S. intelligence agents until October 12, 2013.[6] During that time, al Liby was not permitted to communicate with his family, friends, associates, or representatives from the Libyan

---

[1] Oct. 6, 2013 Dep't of Defense News Release, "Statement by Pentagon Press Secretary George Little on the Capture of Abu Anas al Libi," No. 700-13, [DI 1486-1].

[2] Kleinman Decl. [DI 1485] ¶ 5.

[3] *Id*. ¶¶ 11, 15.

[4] *Id*. ¶ 16.

[5] *Id*. ¶¶ 17-18.

[6] *Id*. ¶¶ 19, 30.

government.[7]  The interrogation purportedly was performed "in an unrelenting, hostile, and extraordinary manner"– in his attorney's words, "inhumane treatment."[8]  His attorney claims also that al Liby was not informed of "the right to have counsel," "his rights under the United Nations Charter," or "his rights under the Hague Convention."[9]

The government does not here respond to defense counsel's assertions as to the circumstances of al Liby's seizure and treatment before he was presented to this Court.  It argues instead that al Liby has not presented competent evidence to raise an issue of fact to be resolved by this Court and, even assuming had he done so, dismissal of the indictment would not be an appropriate remedy for the government's alleged actions.

## I.     The Motion Is Not Based on Competent Evidence

A party must present competent evidence to establish the facts upon which a motion such as this rests.[10]  Absent such evidence, the motion should be denied without a hearing.[11]  Here, defense counsel's declaration was "made upon information and belief" from "the record in his

---

[7]

*Id.* ¶¶ 20, 29.

[8]

*Id.* ¶¶ 30, 32.

[9]

*Id.* ¶¶ 23-26.

[10]

*E.g.*, *United States v. Gillette*, 383 F.2d 843, 848-49 (2d Cir. 1967); *accord United States v. Mottley*, 130 F. App'x 508, 509 (2d Cir. 2005); *see also United States v. Marino*, No. 09 Crim. 1243 (LAK), 2010 WL 3958781, at *2 & n.9 (S.D.N.Y. Sept. 24, 2010) (collecting cases).

[11]

*Gillette*, 383 F.2d at 848 ("The affidavit submitted for appellant is insufficient in that it does not, for example, allege personal knowledge on the part of appellant's attorney; accordingly, there was no factual issue to be resolved and the denial of a hearing was correct.").

office, the pleadings and notices filed to date, and . . . conversations and meetings with his client."[12] It thus is not competent evidence of any of the matters asserted. Indeed, al Liby himself has not submitted an affidavit or declaration describing his apprehension in Libya or his treatment prior to arriving in this Court.[13] No factual issue therefore has been raised and the motion shall be denied on that ground alone. Nonetheless, even if one accepted all of defense counsel's allegations and assertions as true for the purposes of the motion, dismissal of the indictment would not be warranted.[14]

II.    *The Motion Would Fail as a Matter of Law Even Assuming the Factual Allegations Rested on Competent Evidence*

A.    *Ker-Frisbie*

The Supreme Court flatly has held that a forcible abduction of a defendant does not strip a court of jurisdiction to try that defendant.[15]

*Ker* involved a defendant who had been abducted forcibly in Peru and brought to Illinois where he was tried and convicted of larceny. The Supreme Court reasoned that "for mere

---

[12]    DI 1485 ¶¶ 4, 5.

[13]    It is true Pentagon Press Secretary George Little issued a statement that the Department of Defense, acting under military authorities, conducted an operation to apprehend al Liby in Libya. DI 1486-1. Al Liby's motion, however, is predicated on several other allegations regarding what happened to him after he was apprehended. No competent evidence has been provided to support any of those claims even though those facts – what was or was not said or done to al Liby prior to his arrival in this Court – are plainly readily available.

[14]    Al Liby's request to stay the motion until classified discovery is completed therefore is unnecessary. Even assuming future discovery provided admissible evidence regarding who was involved in al Liby's apprehension, those facts would be immaterial for the reasons described below. Al Liby's motion fails as a matter of law.

[15]    *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886).

irregularities in the manner in which [a defendant] may be brought into custody of the law, we do not think he is entitled to say that he should not be tried at all for the crime with which he is charged in a regular indictment."[16]

More than half a century later, the Supreme Court in *Frisbie* reaffirmed "that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.'"[17]  This doctrine, known as the *Ker-Frisbie* rule, "rest[s] on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards."[18]

While al Liby concedes that a criminal defendant, as a general rule, properly may be tried regardless of the method used to bring him to this Court, he nonetheless contends that he is entitled to relief based on *United States v. Toscanino*.[19]  He is mistaken.

---

[16]    *Ker*, 119 U.S. at 440.

[17]    *Frisbie*, 342 U.S. at 522 (citing *Ker*, 119 U.S. at 444).

[18]    *Id*.

[19]    500 F.2d 267 (2d Cir. 1974).

Al Liby relies also on *Rochin v. California*, in which the Supreme Court overturned a drug dealer's conviction obtained with evidence seized by forcibly pumping the defendant's stomach.  342 U.S. 165 (1952).  The Supreme Court there held that a conviction based on evidence obtained by police behavior that "shocks the conscience" violates due process. *Id.* at 172.  As the Second Circuit explained, however, "*Rochin* stands at most for the proposition that a prosecution may effectively be foreclosed by exclusion of evidence tainted by a Fourth Amendment violation." *Brown v. Doe*, 2 F.3d 1236, 1243 (2d Cir. 1993) (citation omitted).  *Rochin* relates to the exclusion of inappropriately obtained evidence – not to dismissal of an indictment – and therefore does not support al Liby.

The defendant in *Toscanino* appealed his narcotics conviction, arguing that he had been seized in Uruguay and tortured for weeks by American agents.  He asserted that, among other things, he was denied sleep and nourishment, forced to walk up and down a hallway for seven or eight hours at a time, kicked and beaten, jolted with electricity through electrodes attached to his body, and flushed with alcohol into his eyes and nose.[20]  The Second Circuit, speculating that the *Ker-Frisbie* rule had been "ero[ded]" and "weakened" by subsequent Supreme Court cases, held that due process "requir[ed] a court to divest itself of jurisdiction over the person of a defendant where it has been acquired as the result of the government's deliberate, unnecessary, and unreasonable invasion of the accused's constitutional rights."[21]  It reversed the conviction and remanded the case for an evidentiary hearing to enable the defendant to prove that the conduct was sufficiently outrageous as to have violated due process.[22]

It is reasonably clear that *Toscanino* no longer is good law.  To the extent, if any, that it survives, its holding is restricted to the outrageousness of its facts.  The Supreme Court repeatedly

---

[20]

500 F.2d at 270.

[21]

*Id*. at 273, 275.

[22]

*Id*. at 281.

has reaffirmed the *Ker-Frisbie* rule since *Toscanino*.[23]  Several other circuits have determined that, in light of those Supreme Court decisions, *Toscanino* cannot survive.[24]

Further, the Second Circuit itself clarified, less than a year after *Toscanino*, that "in recognizing that *Ker* and *Frisbie* no longer provided a carte blanche to government agents bringing defendants from abroad to the United States by the use of torture, brutality and similar outrageous conduct, we did not intend to suggest that any irregularity in the circumstances of a defendant's arrival in the jurisdiction would vitiate the proceedings of the criminal court."[25]  As this Court

---

[23]
  *See, e.g., United States v. Alvarez-Machain*, 504 U.S. 655, 660-62 (1992) (holding that "the court need not inquire as to how respondent came before it" despite defendant's forcible abduction from Mexico by United States agents); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039-40 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *United States v. Crews*, 445 U.S. 463, 474 (1980) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."); *Stone v. Powell*, 428 U.S. 465, 485 (1976) ("judicial proceedings need not abate when the defendant's person is unconstitutionally seized"); *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction.").

[24]
  *See, e.g., United States v. Best*, 304 F.3d 308, 312-13 (3d Cir. 2002) ("In light of these cases, it appears clear that the *Ker-Frisbie* doctrine has not eroded and that the exception described in *Toscanino* rests on shaky ground."); *United States v. Matta-Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995) ("In the shadow cast by *Alvarez-Machain*, attempts to expand due process rights into the realm of foreign abductions, as the Second Circuit did in [*Toscanino*], have been cut short."); *United States v. Mitchell*, 957 F.2d 465, 470 (7th Cir. 1992) ("[W]e have declined to follow the exclusionary rule grounds of *Toscanino* and have questioned its continuing constitutional validity." (citation omitted)); *United States v. Darby*, 744 F.2d 1508, 1531 (11th Cir. 1984) ("[T]he continuing validity of the *Toscanino* approach is questionable after the intervening decision in *Gerstein v. Pugh* . . . .").

[25]
  *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 65 (2d Cir. 1975).

explained,[26] the Second Circuit in *Brown v. Doe*[27] heavily relied on the *Ker-Frisbie* rule to hold that repeated brutal beatings by police following the defendant's arrest did not deny him of substantive due process. The Circuit emphasized that the court "cannot . . . relieve a criminal of punishment for the crime or crimes committed as compensation for wrongs done by representatives of the institutions of society."[28]

In urging that the Second Circuit has not repudiated the so-called *Toscanino* exception, al Liby cites the recent summary order in *United States v. Umeh*.[29] But *Umeh* would not support al Liby here, even if a summary order had precedential effect, which it does not. Convicted of conspiracy to distribute cocaine, the defendant in *Umeh* appealed on the ground, *inter alia*, that jurisdiction was lacking because his arrest in Liberia and brutal torture by American agents resembled that in *Toscanino*. He alleged that "he was physically restrained and beaten and that every time he tried to speak, he was punched, kicked, and hit with a rubber truncheon," that he was kicked "in the jaw, causing him to lose his teeth," required to sit "in a chair with three legs . . . trying to maintain his balance," and "pulled from the back" with a "nylon rope around [his] neck . . . until he could not breathe."[30]

---

[26]

    *United States v. Ghailani*, 751 F. Supp. 2d 502, 507-08 (S.D.N.Y. 2010), *aff'd*, 733 F.3d 29 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1523 (2014).

[27]

    2 F.3d 1236 (2d Cir. 1993).

[28]

    *Id*. at 1243 (citation omitted).

[29]

    527 F. App'x 57 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 464 (2013).

[30]

    Brief of App. Yaroshenko at 8, *United States v. Umeh*, 527 F. App'x 57 (2d Cir. 2013) (Nos. 11-3254, 11-3898).

The Second Circuit recognized that the *Toscanino* "decision . . . assumed the 'erosion' of the *Ker-Frisbie* doctrine, . . . a premise which has been undermined by subsequent decisions of the Supreme Court."[31]   The Circuit nonetheless reasoned that it "need not here decide what vitality, if any, *Toscanino* retains, because our precedent makes plain that it does not foreclose prosecution in factual circumstances similar to those alleged."[32]

This Court agrees and concludes that *Toscanino*, to whatever extent it survives, does not support al Liby here.   Al Liby's counsel has not alleged torture or brutality, nor has he asserted other outrageous conduct of the sort asserted in *Toscanino*.   Al Liby's apprehension rests squarely within the well-established *Ker-Frisbie* rule.   The motion to dismiss the indictment based on the asserted "inhumane treatment" would be denied without a hearing even if there were competent evidence to support al Liby's factual assertions.

### B.    *Posse Comitatus Act*

Al Liby contends next that the alleged use of military personnel during his apprehension violated the Posse Comitatus Act (the "Act").   The Act provides, in pertinent part:

> "Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both."[33]

The phrase "posse comitatus" literally translates as "power of the county" and

---

[31]    *Umeh*, 527 F. App'x. at 64.

[32]    *Id*.

[33]    18 U.S.C. § 1385.

"refer[s] to all those over the age of 15 upon whom a sheriff could call for assistance in preventing any type of civil disorder."[34]   Accordingly, the Act was intended to limit the use of military forces to enforce domestic law immediately after the Civil War.[35]

Al Liby contends that his apprehension in Libya – through "the extreme use of the Army's Delta Force to effect the Defendant's arrest, and then the subsequent Navy's participation in the Defendant's unlawful detention"[36] – violated the Act.   He therefore seeks to exclude any evidence obtained at his apprehension and to dismiss the indictment for lack of jurisdiction.   This Court need not decide whether al Liby's apprehension violated the Act because the relief sought is inappropriate.[37]

*First*, there is no authority to support dismissing an indictment for a violation of the Act.   Nothing on the face of the statute or in the legislative history supports such relief, and al Liby has not cited a single instance in which an indictment was dismissed based on a violation of the Act.

---

[34]
    *United States v. Hartley*, 796 F.2d 112, 114 n.3 (5th Cir. 1986) (citation omitted).

[35]
    *See id.* at 114; *Chandler v. United States*, 171 F.2d 921, 936 (1st Cir. 1948) (recognizing the Act's purpose was "to put an end to the use of federal troops to police state elections in the ex-Confederate states where the civil power had been reestablished").

[36]
    Def. Mem. of Law [DI 1486], at 11.

[37]
    The Court notes, however, that the Act likely does not apply to Al Liby's apprehension in Libya.   Those courts to have examined the issue have viewed the Act as limited to the territorial jurisdiction of the United States.   *See Chandler*, 171 F.2d at 936 (The Posse Comitatus Act "is properly presumed to have no extraterritorial application in the absence of statutory language indicating a contrary intent."); *see also Gillars v. United States*, 182 F.2d 962, 972 (D.C. Cir. 1950) ("The use of our Army of Occupation in Germany could not be characterized as a 'posse comitatus' since it was the law enforcement agency in Germany at the time of appellant's arrest.").

As the Ninth Circuit explained in *United States v. Cotten*,[38] "[t]he novel argument . . . that the use of military personnel and a *posse comitatus* . . . require[s] either dismissal of charges or a finding of lack of jurisdiction . . . . exceeds that required by the conduct."[39] The Court therefore cannot conclude that it lacks jurisdiction over al Liby so as to require dismissal of the indictment.

*Second*, even where a violation of the Act is found or suspected, courts consistently have held that creation or application of an exclusionary rule is not appropriate.[40] Al Liby claims that, as a general matter, exclusion of evidence is warranted in cases of "'severe official misconduct born[e] of malice, caprice or brazen lawlessness.'"[41] But al Liby has not alleged facts of that nature – nor has he specified the nature of the evidence he seeks to exclude – and the statement on which he relies is taken from a case in which the Posse Comitatus Act was not even at issue. Indeed, "every federal court to have considered the issue has held that suppression is not an appropriate

---

[38]

471 F.2d 744 (9th Cir. 1973).

[39]

*Id*. at 749 (italics in original); *see also United States v. Yunis*, 924 F.2d 1086, 1093-94 (D.C. Cir. 1991) (reasoning that "dismissal of all charges against Yunis might well be an inappropriate remedy if violations of the Posse Comitatus Act were found" (citations omitted)).

[40]

*See, e.g., Gilbert v. United States*, 165 F.3d 470, 474 n.2 (6th Cir. 1999) ("[E]very federal court to have considered the issue has held that suppression is not an appropriate remedy for a violation of the Act." (collecting cases)); *United States v. Mullin*, 178 F.3d 334, 342-43 (5th Cir. 1999) ("We need not address whether the Act was violated. '[E]ven where a violation of the Posse Comitatus Act is found or suspected, courts have generally found that creation or application of an exclusionary rule is not warranted.'" (citing *Hartley*, 796 F.2d at 115)); *United States v. Al-Talib*, 55 F.3d 923, 930 (4th Cir. 1995) ("As a general matter, the exclusionary rule is not a remedy for violations of the PCA." (citations omitted)); *Hayes v. Hawes*, 921 F.2d 100, 103 (7th Cir. 1990).

[41]

DI 1486, at 10-11 (quoting *United States v. Neiswender*, 590 F.2d 1269, 1271-72 (4th Cir. 1979)).

remedy for a violation of the Act."[42]   The relief sought by al Liby under the Act simply is unavailable.

C.       *United Nations Charter and the Hague Convention*

Al Liby asserts finally that his apprehension violated international treaties, specifically the United Nations Charter and the Hague Convention, warranting dismissal of the indictment.  The argument, however, fails as a matter of law for several reasons.

*First*, the treaty provisions on which al Liby relies are not self-executing.  "[W]hile they constitute international law commitments [they] do not by themselves function as binding federal law."[43]   Treaties are not judicially enforceable "unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms."[44]

The United Nations Charter has been ratified by the United States, but nothing suggests that it was intended to be enforceable in federal courts.  The Second Circuit has itself recognized that the United Nations Charter is not self-executing.[45]   Moreover, the provisions on which al Liby relies in Article 2 of the Charter – including the "sovereign equality" of states and that

---

[42]

    *Gilbert*, 165 F.3d at 474 n.2 (collecting cases).

[43]

    *Medellin v. Texas*, 552 U.S. 491, 504 (2008).

[44]

    *Id*. at 505 (citation omitted).

[45]

    *Flores v. S. Peru Copper Corp*., 414 F.3d 233, 250 n.24 (2d Cir. 2003) (collecting cases).

"[m]embers shall refrain in their international relations from the threat or use of force against the territorial integrity or political independence of any state" – are only general principles.[46] None of those principles al Liby references can reasonably have been intended to be enforceable in U.S. courts.

The Hague Convention similarly is not self-executing. It attempts to impose standards of conduct for belligerent nations, but the Convention itself indicates that it was not intended to create judicially enforceable rights. Article 1 specifies that "[t]he Contracting Powers shall issue instructions to their armed land forces which shall be in conformity with the Regulations . . . ."[47] As the Fourth Circuit has explained: "This language must be taken as further evidence that the Hague Convention is not self-executing, and that, instead, the signatories contemplated that individual nations would take subsequent executory actions to discharge the obligations of the treaty."[48] This Court agrees and concludes that the Hague Convention is not enforceable on its own in U.S. courts.

*Second*, as al Liby concedes, treaties "are not enforceable as a private right of any individual."[49] More than a century ago, the Supreme Court recognized:

"A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international

---

[46] Charter of the United Nations, art. 2, paras. 1, 4, 59 Stat. 1031 (1945).

[47] Hague Convention Respecting the Law and Customs of War on Land, art. 1, 36 Stat. 2277 (1907).

[48] *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968-69 (4th Cir. 1992).

[49] DI 1486, at 15.

negotiations and reclamations, so far as the injured parties choose to seek redress. . . . It is obvious that with all this the judicial courts have nothing to do and can give no redress."[50]

Al Liby asserts nonetheless that a private party may seek relief where a signatory to the treaty files a protest and that Libya has done so here.[51] That proposition applies, however, only "where a treaty provides certain benefits for nationals of a particular state."[52] Al Liby has not identified any provision of the United Nations Charter or the Hague Convention that created judicially enforceable private rights.[53]

*Third*, even assuming that the international treaties were self-executing and created judicially enforceable private rights, dismissal of the indictment would not be appropriate. The treaties do not provide for such relief, and the Court will "infer neither an entitlement to suppression nor an entitlement to dismissal absent express, or undeniably implied, provision for such remedies

---

[50]

*Edye v. Robertson*, 112 U.S. 580, 598 (1884).

[51]

The Court need not determine whether Libya in fact has lodged an official protest under the treaties because al Liby's argument is flawed as a matter of law. It is not convinced, however, that the public statements and press releases from the Prime Minister of Libya – which never once mention the United Nations Charter or the Hague Convention – constitute such a protest.

[52]

*United States v. De La Pava*, 268 F.3d 157, 164 (2d Cir. 2001) ("[E]ven where a treaty provides certain benefits for nationals of a particular state, . . . it is traditionally held that any rights arising out of such provisions are, under international law, those of the states and . . . individual rights are only derivative through the states.") (quoting *Lujan*, 510 F.2d at 67)).

[53]

"Whether a treaty is self-executing is a question distinct from whether the treaty creates private rights or remedies." RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 111 cmt. h (1987).

in a treaty's text."[54]  As the Supreme Court recognized in *Sanchez-Llamas v. Oregon*,[55] "where a treaty does not provide a particular remedy, either expressly or implicitly, it is not for the federal courts to impose one."[56]  Thus, the international treaties cannot protect al Liby from prosecution for his alleged crimes.

### Conclusion

For the foregoing reasons, al Liby's motion to dismiss the indictment for lack of jurisdiction [DI 1484] is denied in all respects.

SO ORDERED.

Dated:          May 22, 2014.

_____

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[54]

*United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000).

[55]

548 U.S. 331 (2006).

[56]

*Id*. at 347.