UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

        - v. -                                  :          98 Cr. 1023 (LAK)

KHALID AL FAWWAZ,                           :
     a/k/a "Khaled Abdul Rahman Hamad
       al Fawwaz,"                            :
     a/k/a "Abu Omar,"
     a/k/a "Hamad,"                          :

ADEL ABDEL BARY,                            :
     a/k/a "Adel Mohammed Abdul
       Almagid Abdel Bary,"                  :
     a/k/a "Abbas,"
     a/k/a "Abu Dia,"                        :
     a/k/a "Adel," and
                                          :

ANAS AL LIBY                                :
     a/k/a "Nazih al Raghie,"                :
     a/k/a "Anas al Sebai,"
                                            :

                   Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
# TO DEFENDANTS' PRETRIAL MOTIONS FOR SEVERANCE AND DUAL JURIES

                                      PREET BHARARA
                                      United States Attorney
                                      Southern District of New York

Sean S. Buckley
Adam Fee
Nicholas J. Lewin
Stephen J. Ritchin
        Assistant United States Attorneys
        - Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT BACKGROUND ..................................................................................................2

DISCUSSION ...........................................................................................................................4

I.      The Defendants' Severance Motions Should Be Denied.....................................................4

        A.      Applicable Law ...................................................................................................4

        B.      Discussion ..........................................................................................................7

II.     There is No Compelling Reason to Empanel Multiple Juries...........................................10

        A.      Applicable Law .................................................................................................10

        B.      Discussion .........................................................................................................11

CONCLUSION.........................................................................................................................15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

       - v. -                                   :          98 Cr. 1023 (LAK)

KHALID AL FAWWAZ,                           :
    a/k/a "Khaled Abdul Rahman Hamad
      al Fawwaz,"                            :
    a/k/a "Abu Omar,"
    a/k/a "Hamad,"                          :
ADEL ABDEL BARY,
    a/k/a "Adel Mohammed Abdul                 :
      Almagid Abdel Bary,"
    a/k/a "Abbas,"                          :
    a/k/a "Abu Dia,"
    a/k/a "Adel," and                       :
ANAS AL LIBY
    a/k/a "Nazih al Raghie,"                  :
    a/k/a "Anas al Sebai,"
                                   :
                Defendants.
                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' PRETRIAL MOTIONS FOR SEVERANCE AND DUAL JURIES

### PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to the pretrial

motions for severance and dual juries of defendants Khalid al Fawwaz, Adel Abdel Bary, and

Anas al Liby.[1]  Fawwaz  and Bary move to sever their trial from that of al Liby.  Al Liby seeks a

separate trial from Fawwaz and Bary.  In the event severance is denied, each defendant seeks to

---

[1]  "Fawwaz Br." refers to the memorandum of law filed on August 1, 2014 in support of the motions of Khalid al Fawwaz; "Bary Br." refers to the memorandum of law filed on August 1, 2014, in support of the motions of Adel Abdel Bary; "Al Liby Br." refers to the letter dated August 1, 2014, submitted in support of the motions of Anas al Liby.

empanel two juries at the joint trial – one to consider the evidence against Fawwaz and Bary, and another to consider the evidence against al Liby.

For the reasons given by the Court in denying the defendants' prior severance motions as well as the reasons set forth below, the defendants' renewed severance motions should be denied. In addition, because no defendant has articulated a valid basis to justify the unnecessarily burdensome approach of empaneling multiple juries, that request should also be denied.

## RELEVANT BACKGROUND

On April 1, 2013, Fawwaz filed a motion seeking, *inter alia*, a separate trial from Bary. Fawwaz argued (i) that the "massive disparity between the charges against Mr. Al Fawwaz and Mr. Bary" weighs in favor of severance because of the "overwhelmingly prejudicial proof" that will be introduced to prove the charges against Bary; (ii) that a joint trial would be unreasonably lengthy; and (iii) that Fawwaz "will put forth a defense . . . which is intensely antagonistic to Mr. Bary." Fawwaz's April 2013 Br. at 16-17. The Court rejected each prong of Fawwaz's motion. The Court held, in relevant part:

- Fawwaz failed to demonstrate spillover prejudice from a joint trial because (1) "Bary is charged with all of the four conspiracies with which Al Fawwaz is charged" and therefore "[m]uch if not most of the evidence admissible against Abdel Bary as to his participation in those conspiracies therefore would be admissible also against Al Fawwaz"; and (2) "although Al Fawwaz is not charged in any of the substantive counts, the evidence underlying those counts is likely to be admissible against him." Order dated June 20, 2013, DI 1243, at 4-5.

- The expected lengths of joint or separate trials would be substantially similar because "much if not most of the evidence admissible against Abdel Bary would be admissible also against Al Fawwaz even if he were tried separately." *Id.* at 7.

- Fawwaz failed to "in any way substantiate[] the claim that he intends to put forth a defense that is antagonistic to Mr. Bary." *Id.*

2

On October 21, 2013, following al Liby's arrival in this District, the Government requested a joint trial of all three defendants on the ground that each defendant "was joined in a single indictment, and each defendant is charged for his participation in identical conspiracies." Government's Oct. 21, 2013 Letter, DI 1403, at 1.  Each defendant opposed that request.

By letter dated December 2, 2013, Bary argued that "[a]ny evidence of criminal activity [relating to al Liby] after Mr. Bary's arrest will be unduly prejudicial, and under these circumstances the spillover effect would be incurable."  DI 1402, at 1.  Bary also argued that severance was justified due to the "unique concern that the charged offenses concern pre-September 11th conduct, while the trial will occur in a post-9/11 era."  *Id.*  Fawwaz joined in Bary's arguments regarding the "prejudicial admission of . . . post-1998 evidence that may be introduced against Al Liby at a joint trial."  Fawwaz's Dec. 2, 2013 Letter, DI 1404, at 1.  By letter dated December 1, 2013, al Liby argued that severance was merited based on the risk of spillover prejudice from being tried with Fawwaz and Bary.  *See* DI 1386, at 6-7.

At a December 12, 2013 conference, the Court rejected the defendants' arguments and ordered a joint trial pursuant to Rule 13 of the Federal Rules of Criminal Procedure.  Transcript of Dec. 12, 2013 Conference ("Dec. 12 Tr."), at 15.  The Court held in a subsequent written Order:

> The Court finds now that "all offenses and all defendants could have been joined in a single indictment or information" and that these defendants shall be tried together, albeit on their respective indictments.

Order dated Dec. 12, 2013, DI 1400, at 1.

On August 1, 2014, the defendants renewed their requests for severance.  Bary now seeks to sever al Liby from the trial of Bary and Fawwaz exclusively on the ground he previously raised in his December 2013 submission – namely, that any evidence relating to events after

Bary's arrest in 1998 will prejudice Bary by raising the specter of "acts of Muslim-associated terrorism that took place while Mr. Bary was detained and Mr. Al Liby was free."  Bary Br. at 11.  Fawwaz similarly argues that a joint trial with al Liby will result in spillover prejudice against Bary and Fawwaz arising from al Liby's "post-indictment conduct."  Fawwaz Br. at 4. In support of his renewed severance motion, al Liby specifically relies on his prior applications for severance – all of which have been rejected by the Court – and joins in the arguments advanced by Bary and Fawwaz.  Al Liby Br. at 1.

With respect to the request for multiple juries, the defendants offer a number of purported justifications, including the need to avoid a potential "*Bruton* problem," and so-called "practical" considerations, including the "drastically different … zeitgeist" in a "post-9/11 era." [2]  Fawwaz Br. at 9-10; *see* Bary Br. at 13 (noting the "charged atmosphere of post 9/11 New York").  In support of his request for multiple juries, al Liby points generally to the "danger . . . of a joint trial" with a single jury, and asserts that "the empanelling of two juries will serve best the due process rights of Defendant al Libi."  Al Liby Br. at 4-5.

## DISCUSSION

### I.    The Defendants' Severance Motions Should Be Denied

#### A.   Applicable Law

Rule 14 of the Federal Rules of Criminal Procedure provides that a district court may "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" "[i]f the joinder of offenses or defendants in an indictment, an information, or a

---

[2] The defendants' respective arguments on this issue are referred to collectively as "the defendants' arguments" because each defendant has joined in Fawwaz's extended arguments addressing this issue.  *See* Bary Br. at 2 n.1; Al Liby Br. at 6.

consolidation for trial appears to prejudice a defendant."[3]  The decision whether to grant a

motion for severance under Rule 14 is "confided to the sound discretion of the trial court,"

*United States* v. *Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (citations omitted), and the trial court's

exercise of that discretion is "virtually unreviewable" on appeal.  *United States* v. *Yousef*, 327

F.3d 56, 150 (2d Cir. 2003); *United States* v. *LaSanta*, 978 F.2d 1300, 1306 (2d Cir. 1992)

(quoting *United States* v. *Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991)).  The Supreme Court has

instructed that severance is warranted only if "there is a serious risk that a joint trial would

compromise a specific trial right of one of the defendants, or prevent the jury from making a

reliable judgment about guilt or innocence."  *Zafiro* v. *United States*, 506 U.S. 534, 539 (1993).

The presumption in favor of joint trials is so strong that the Court of Appeals has stated

that "[t]he principles that guide the district court's consideration of a motion for severance

usually counsel denial."  *United States* v. *Rosa*, 11 F.3d 315, 341 (2d Cir. 1993).  That

presumption is particularly strong where, as here, "the defendants are alleged to have

participated in a common plan or scheme."  *United States* v. *Salameh*, 152 U.S. 88, 115 (2d Cir.

1998); *United States* v. *Girard*, 601 F.2d 69, 72 (2d Cir. 1979); *see also United States* v. *Bin*

*Laden*, 109 F. Supp. 2d 211, 214 n.7 (S.D.N.Y. 2000) ("It is well established that conspiracy

allegations, such as the five with which all seventeen Defendants are charged in this case can

serve as a 'common link' justifying joinder of Defendants in a single indictment.").

Accordingly, the Court of Appeals consistently has permitted joinder of defendants and charges

---

[3]  The defendants do not contest the proper joinder of the charges and defendants in the
Indictment.  And, indeed, "it is well established that under Fed. R. Crim. P. 8(b) joinder of
multiple defendants is proper if they are alleged to have participated in the same series of acts
which are part of a common scheme or plan, or connected together," as in this case.  *United*
*States* v. *Bernstein*, 533 F.2d 775, 789 (2d Cir. 1976).  Moreover, "joinder of a conspiracy count
and the substantive counts arising out of the conspiracy is proper since the charge of conspiracy
provides a common link and demonstrates the existence of a common plan." *Id.*; *see also United*
*States* v. *Jackson*, 180 F.3d 55, 75 (2d Cir. 1999) ("there is a clear preference that defendants
who are indicted together be tried jointly").

where the acts of the defendants share some identity of facts or participants, or arise from a common plan or scheme.  *See United States* v. *Cervone*, 907 F.2d 332, 340-42 (2d Cir. 1990) (upholding joinder of eighteen defendants in 102-count indictment with a variety of labor racketeering charges, as well as related charges of obstruction of justice, bribery, and making false statements); *United States* v. *Attanasio*, 870 F.2d 809, 814-15 (2d Cir. 1989) (finding defendants charged with conspiracy to defraud IRS properly joined with defendants and charges relating to a separate conspiracy to defraud IRS because of common participants and because they were part of a series of acts); *Bin Laden*, 109 F. Supp. 2d at 211.

A defendant seeking severance therefore shoulders the "'extremely difficult burden'" of showing that he would be so prejudiced by the joinder at issue that he would be denied a fair trial.  *United States* v. *Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989) (quoting *United States* v. *Carpentier*, 689 F.2d 21, 27 (2d Cir. 1982)); *see also Rosa*, 11 F.3d at 341.  A defendant may not prevail merely by showing that he "may have a better chance of acquittal in [a] separate trial[]." *Zafiro* v. *United States*, 506 U.S. at 540; *see also United States* v. *Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials").

"[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials."  *United States* v. *Carson*, 702 F.2d 351, 366-67 (2d Cir. 1983); *United States* v. *Torres*, 901 F.2d 205, 230 (2d Cir. 1990); *see also United States* v. *Zackson*, 6 F.3d 911, 922 (2d Cir. 1993).  Moreover, "[t]he fact that . . . codefendants [are] tried for a crime not committed by another codefendant does not, without more, create the sort of miscarriage of justice that would require a new trial."  *United States* v. *Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996).  Rather, a defendant must show that the evidence

introduced against his co-defendants would "in some way affect[ ] the jury's ability fairly and

rationally to evaluate the evidence of [the defendant's] guilt." *Id.* The Second Circuit long has

held that "[e]vidence at the joint trial of alleged co-conspirators that, because of the alleged

conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the

moving defendant is neither spillover nor prejudicial." *Rosa*, 11 F.3d at 341; *see also United*

*States* v. *Spinelli*, 352 F.3d 48, 55-56 (2d Cir. 2003) (upholding denial of severance motion and

denying prejudicial spillover claim where "much of the evidence about [co-defendant's] crimes

would have been admissible at a separate trial of [defendant], since it was relevant to proving the

nature and scope of the conspiracy"); *United States* v. *Villegas*, 899 F.2d 1324, 1347-48 (2d Cir.

1990) (rejecting claims that spillover evidence against co-defendants prejudiced claiming

defendants).

### B. Discussion

With respect to severance, the defendants have failed to identify a single argument or fact

that was not before the Court when it ordered a joint trial in December 2013. Instead, the

defendants merely re-assert arguments that did not then – and do not now – justify severance

under the applicable standard.

As this Court has repeatedly held, the defendants' arguments relating to purported

"spillover prejudice" are critically undermined by the fact that much, if not all, of the proof that

will be offered to prove the substantive counts also is necessary and relevant to the conspiracy

counts. As such, much – if not virtually all – of the evidence relevant to the trial of any single

defendant will also be relevant and admissible at any trial of another defendant on the underlying

conspiracies. *See United States* v. *Morrow*, 537 F.2d 120, 136 (5th Cir. 1976) ("Once the

Government has satisfactorily established the existence of the conspiracy, the same evidence

used to convict a particular defendant is admissible against all co-defendants shown to be members of the conspiracy.  Given this state of affairs, the interest in judicial economy understandably exerts strong pressures in favor of a joint trial.").

In addition, as the Court has previously concluded, the admission of evidence relating to al Liby's conduct after the dates of Fawwaz and Bary's arrests does not establish prejudice sufficient to require severance.  In support of his argument, Bary cites – as he did in his December 2013 submission seeking severance – to other, entirely unrelated, acts of terrorism that have occurred since the late 1990s, including the bombing of the U.S.S. Cole in Yemen in 2000, the shootings at Fort Hood in Texas in 2009, the attempted detonation of a bomb in Times Square in 2010, the attack on the U.S. embassy in Benghazi, Libya in 2012, and the Boston Marathon bombing in 2013.  Based on this litany of cases, without any basis in fact, Bary then contends that jurors' thoughts about these "acts of Muslim-associated terrorism" will unduly prejudice Bary if he is joined for trial with al Liby.  Bary Br. at 10-11.  This argument should be rejected as a basis for severance.  Bary not only fails to assert that the Government will offer evidence of these other events at a joint trial – it will not, of course – he does not even attempt to explain how al Liby's presence at trial increases the risk of unfair prejudice relating to or arising from unrelated acts of terrorism.

Finally, even assuming *arguendo* that certain evidence relevant to the crimes with which al Liby has been charged, and which post-dates Fawwaz's and/or Bary's detention, was not admissible against Fawwaz and Bary, the jury can be instructed not to consider it when weighing the case against Fawwaz and Bary, which is generally the preferred method to cure any risk of prejudice.  *See* Order dated June 20, 2013, DI 1243, at 2 ("even when there is a risk of prejudice, 'less drastic measures such as limiting instructions often will suffice as an alternative to granting

a Rule 14 severance motion'") (quoting *Feyrer,* 333 F.3d at 114).  The defendants argue once

again – as they did in litigating severance before this Court in June and December 2013 – that

this kind of jury instruction cannot be relied upon in this case.  *See* Bary Br. at 11-12; Al Liby

Br. at 4.

       The Supreme Court, however, has made it clear that "the almost invariable assumption of

the law [is] that jurors follow their instructions."  *Richardson* v. *Marsh,* 481 U.S. 200, 206

(1987) (citations omitted); *accord Weeks* v. *Angelone,* 528 U.S. 225, 234 (2000) ("[a] jury is

presumed to follow its instructions") (citing *Richardson,* 481 U.S. at 211).  There is no reason

not to apply in this case the presumption that the jury will follow the Court's instructions to

decide the case against each defendant based on the evidence against him, and not evidence

introduced only against another defendant.  *See Skilling* v. *United States,* 561 U.S. 358, 399 n.34

(2010) ("Our decisions have rightly set a high bar for allegations of juror prejudice due to pretrial

publicity.  News coverage of civil and criminal trials of public interest conveys to society at large

how our justice system operates.  And it is a premise of that system that jurors will set aside their

preconceptions when they enter the courtroom and decide cases based on the evidence presented.

Trial judges generally take care so to instruct jurors, and the District Court did just that in this

case.") (citations omitted).

       In sum, virtually all of the trial proof will be admissible against each defendant

separately, and against all three defendants collectively as co-conspirators.  Accordingly, the

recycled arguments of the defendants regarding spillover prejudice should – as before – be

rejected.

**II.      There Is No Compelling Reason to Empanel Multiple Juries**

**A.  Applicable Law**

While courts in other circuits have recognized that a "two-jury trial may comport with the requirements of due process," *United States* v. *Gray*, 173 F. Supp. 2d 1, 7 (D.D.C. 2001), it is widely acknowledged to constitute a "major departure from the traditional trial procedure [which] runs the risk of injecting confusion and uncertainty into the proceedings.  That the dual jury procedure increases these risks is beyond dispute." *United States* v. *Lewis*, 716 F.2d 16, 23 (D.C. Cir. 1983) (internal quotation marks and citation omitted).  Some of the "recognized risks and dangers that attend a two-jury trial," *Gray*, 173 F. Supp. 2d at 7, were described by Judge Sand in rejecting this approach in advance of the 2001 trial in *United States* v. *Bin Laden, et al.*, including that it should only be used in "relatively uncomplicated situations which will not require the excessive moving of juries in and out of the courtroom" as well as the risk that empanelling two juries could limit the extent to which "any exposure of the jurors to prejudicial information [from publicity surrounding the trial] can be more carefully monitored and addressed." *Bin Laden*, 109 F. Supp. 2d at 215 n.8; *see also Wilson* v. *Sirmons*, 536 F.3d 1064, 1099 (10th Cir. 2008) ("Dual jury trials require counsel to guard against prejudicial evidence that might be entered against another defendant, drawing the lawyer's attention away from his own client . . . .  Additionally, constantly removing a jury from the room interrupts the flow of trial and can confuse the jury.  Jury management difficulties increase two-fold.").

Even putting aside the risks of a two-jury trial, the use of two juries aims to address the type of prejudice that would otherwise require severance of defendants.  Thus, the approach is appropriately employed only where a defendant has shown that he would be so prejudiced by the joinder at issue that he would be at risk of being denied a fair trial.  *See*, *e.g.*, *United States* v.

*Lebron-Gonzalez*, 816 F.2d 823, 831 (1st Cir. 1987) ("resort to this measure [of empaneling two juries] was a way of minimizing any prejudice from jointly trying the defendants"); *Wilson*, 536 F.3d at 1099 ("The use of a dual jury system may very well be a reasonable response to prejudicial joinder.").

### B. Discussion

The defendants' arguments in favor of multiple juries echo the arguments that have been rejected by this Court as insufficient to justify severance. These arguments are equally unavailing in support of the defendants' requests for multiple juries.

First, the defendants argue that the preference to use dual juries only in "relatively uncomplicated situations" should not be a factor in this case because it involves "only three defendants and seven attorneys." Fawwaz Br. at 6-7. This contention is incorrect. This case involves an estimated two to three month trial, the anticipated testimony of dozens of witnesses from multiple foreign countries, and scores of evidentiary exhibits, all relating to proving multiple counts of extremely serious criminal conduct and multiple conspiracies spanning approximately seven years. Whatever the term "relatively uncomplicated" may mean in the context of a multi-defendant trial, it certainly does not describe the trial in this case. All of the "risks and dangers," *Gray*, 173 F. Supp. 2d at 7, identified by courts as being associated with dual juries will be present in this case: (i) given the anticipated length and relative complexity of the trial, multiple juries would require shuffling jurors in and out of the courtroom at regular intervals, which would likely "interrupt[] the flow of trial and [] confuse the jury," *Wilson*, 536 F.3d 1099; (ii) doubling the number of jurors would considerably extend the time and complexity of jury selection, jury instructions, and jury addresses, among other "[j]ury management difficulties," *id.*; and (iii) the constant need to screen which evidence should be

given to which jury would require a substantial additional amount of the Court's and counsel's attention during the trial. Where justified, these may be acceptable additional burdens; but that is not the case here because the defendants have failed to proffer any persuasive basis justifying the empanelment of two juries.

Second, the defendants note the unremarkable proposition that other circuits have affirmed convictions obtained in trials that empaneled multiple juries. *See* Fawwaz Br. at 7. The defendants do not, however, identify any factors from those cases that weigh in favor of adopting a similar approach in this case. This is not surprising, given that the cases cited by the defendants in support of this proposition generally involved circumstances not found here. For example, the cases upon which the defense relies involved, *inter alia*, (i) the use of multiple juries as an alternative in situations that would otherwise require "complete severance," *see United States* v. *Hayes*, 676 F.2d 1359, 1366 (11th Cir. 1982) and *Wilson*, 536 F.3d at 1098-99 (both cited in Fawwaz Br. at 7); or (ii) intractable testimonial issues under *Bruton* v. *United States*, 391 U.S. 123, 88 S.Ct. 1620 (1968), *see United States* v. *Lewis*, 716 F.2d at 19 and *United States* v. *Sidman*, 470 F.2d 1158, 1167 (9th Cir. 1972) (both cited in Fawwaz Br. at 7).

Neither of these concerns is present here. Evidence relating to al Liby's conduct in the post-1998 period – such as the fruits of the search of al Liby's residence in the United Kingdom in 2000 – is very likely to be admissible against Fawwaz and Bary, as well as al Liby, because it serves to establish the existence of a conspiracy with which all three have been charged. *See*, *e.g.*, *United States* v. *Koppers Co., Inc.* 652 F.2d 290, 298 (2d Cir. 1981) ("post-conspiracy evidence is admissible if it is probative of the existence of the conspiracy") (citations omitted); *United States* v. *Bermudez,* 526 F.2d 89, 95 (2d Cir. 1975) ("[e]vidence obtained by searches conducted after the termination of a conspiracy has frequently been held admissible to prove the

existence of the conspiracy even though occurring after its conclusion"). And even if it were not

so admissible, the defendants have failed to explain why the procedurally burdensome step of

multiple juries would be justified in this case as opposed to the well-settled means of addressing

the admission of evidence against one defendant but not his co-defendants through a jury

instruction.

Nor have the defendants identified a potential *Bruton* issue that could not be addressed by

other, less drastic measures than empaneling two juries. The defendants argue that the admission

of al Liby's post-arrest statement to law enforcement – in which he did not mention either

Fawwaz or Bary by name – presents the potential for "*Bruton* error." Fawwaz Br. at 8-9. *See*

*also* Exhibit A (*Mirandized* Post-Arrest Statement of al Liby). However, any concerns under

*Bruton* could be effectively addressed in this case through appropriate jury instructions. There is

overwhelming authority for the proposition that one defendant's confession can be admitted in a

way that causes no prejudice to his co-defendant. In *Richardson*, the Supreme Court considered

a confession introduced against one defendant in a multi-defendant trial, and explained at length

the conclusive presumption that juries follow instructions to consider a confession only against

the defendant who gave it, 481 U.S. at 206-11. In fact, limiting instructions are sufficiently

powerful that so long as one defendant's confession does not facially incriminate his co-

defendant, as here, the co-defendant will suffer no prejudice even if the confession mentions

unnamed accomplices. *Id.* at 208 (stating that where a defendant's redacted confession does not

"incriminate[e a codefendant] on its face" and would incriminate the codefendant "only when

linked with evidence introduced later at trial," the confession is admissible because a limiting

instruction "may well be successful in dissuading the jury from entering onto the path of

inference in the first place, so that there is no incrimination [of the co-defendant] to forget");

*United States* v. *Jass*, 569 F.3d 47, 60-61 (2d Cir. 2009) (describing the "critical inquiry" as "not whether a jury might infer from other facts . . . that a declarant's neutral allusion to a confederate might have referenced the defendant," but "whether the neutral allusion sufficiently conceals the fact of explicit identification to eliminate the overwhelming probability that a jury hearing the confession at a joint trial will not be able to follow an appropriate limiting instruction"). Moreover – though almost certainly not necessary here – redactions or substitutions for parts of al Liby's post-arrest statement can cure any conceivable Confrontation Clause issue. *See United States* v. *Taylor*, 745 F.3d 15, 28 (2d Cir. 2014).

Finally, the defendants reiterate their assertions regarding the purported "zeitgeist" of conducting trial in "a post-9/11 era." Fawwaz Br. at 9-10. This argument was first made to the Court in closely similar terms in December 2013, shortly before the Court ordered a joint trial of all three defendants. *See* Bary December 2013 Letter, at 1 ("This case presents the unique concern that the charged offenses concern pre-September 11th conduct, while the trial will occur in a post-9/11 era."). In this most recent iteration of the argument, the defendants still have failed to explain how this worry about the current "zeitgeist" justifies the use of dual juries both of which would, of course, be hearing evidence in the "post-9/11 era."

The use of a single jury is simply unrelated to the defendants' purported concerns about trying a terrorism case after the events of September 11, 2001. In light of the fact that much – if not all – of the evidence against al Liby will also be admissible against Fawwaz and Bary and the well-settled presumption that the jury will be able to follow appropriate limiting instructions, there is no reason to conclude that multiple juries are merited in this case.

**CONCLUSION**

For all of the foregoing reasons, the defendants' motions for severance and multiple

juries should be denied.

Dated: New York, New York
      August 15, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney

By:    ___/s/_____ _____

Sean S. Buckley
Adam Fee
Nicholas J. Lewin
Stephen J. Ritchin
Assistant United States Attorneys
(212) 637-2261 / 1589 / 2337 / 2503

15

**AFFIRMATION OF SERVICE**

NICHOLAS LEWIN, pursuant to 28 U.S.C. § 1746, hereby declares under the penalty of perjury:

I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. On August 14, 2014, I caused copies of the Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions for Severance and Dual Juries to be delivered by ECF and electronic mail including to the following counsel for the defendants:

|  |  |  |
|---|---|---|
| Andrew G. Patel | Bernard V. Kleinman | Bobbi C Sternheim |
| apatel@apatellaw.com | attrnylwyr@yahoo.com | bc@sternheimlaw.com |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: New York, New York
         August 14, 2014

                                        /s/ Nicholas J. Lewin
                                        Nicholas J. Lewin
                                        Assistant United States Attorney

16