UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

       -against-                                S7 and S10  98-cr-1023 (LAK)

KHALID AL FAWWAZ and ANAS AL LIBY,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OPINION**

Appearances:

        Sean S. Buckley
        Adam Fee
        Nicholas J. Lewin
        Stephen J. Ritchin
        Assistant United States Attorneys
        Preet Bharara
        UNITED STATES ATTORNEY

        Bobbi C. Sternheim
        LAW OFFICES OF BOBBI C. STERNHEIM

        David V. Kirby
        Barbara E. O'Connor
        O'CONNOR & KIRBY, PC

        *Attorneys for Defendant Khalid al Fawwaz*

        Bernard V. Kleinman
        LAW OFFICE OF BERNARD V. KLEINMAN, PLLC
        *Attorney for Defendant Anas al Liby*

LEWIS A. KAPLAN, *District Judge.*

        Defendants Khalid al Fawwaz and Anas al Liby were indicted for, among other

things, conspiring with Usama Bin Laden and others to kill Americans abroad by, among other

means, bombing the United States embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania, bombings in which 224 people reportedly were killed and many more injured. This case is now before the Court on defendants' renewed motions to sever or, alternatively, to empanel two juries.

*Facts*

Al Fawwaz is charged on superseding indictment S7, and al Liby is charged on S10. Both contain 308 counts. Al Fawwaz and al Liby each is charged in Count One (conspiracy to kill United States nationals), Count Three (conspiracy to murder), Count Five (conspiracy to destroy buildings and property of the United States), and Count Six (conspiracy to attack national defense utilities). Neither is charged in the remaining counts, which involve other defendants.

On October 21, 2013, the government requested a joint trial on the ground that each defendant "was joined in a single indictment, and each defendant is charged for his participation in identical conspiracies."[1] Having found that "all offenses and all defendants could have been joined in a single indictment or information," the Court ordered a joint trial of the respective superseding indictments pursuant to Federal Rule of Criminal Procedure 13.[2] At the time, Abdel Bary, al Fawwaz, and al Liby were ordered to be tried jointly. Abdel Bary, however, subsequently pled guilty.[3]

---

[1]  Ltr. from S. Buckley to Court (Oct. 21, 2013) [DI 1403], at 1.

[2]  Order (Dec. 12, 2013) [DI 1400].

[3]  *See* Mem. Op. (Sept. 30, 2014) [DI 1739] (accepting plea agreement).

The Court nonetheless explicitly permitted defendants to renew their motions for severance and/or to empanel separate juries.[4]  On August 1, 2014, defendants renewed their motions to sever and moved, in the alternative, for separate juries.  The Court denied the motions on September 3, 2014.[5]  This Memorandum Opinion explains the reasons for that decision.

*Discussion*

I.    *Severance*

Joint trials "play a vital role in the criminal justice system" by, among other things, promoting prosecutorial and judicial efficiency and "avoiding the scandal and inequity of inconsistent verdicts."[6]  There is a particularly strong preference for a joint trial where, as here, "the defendants are alleged to have participated in a common plan or scheme."[7]

Nonetheless, Federal Rule of Criminal Procedure 14(a) provides that a district court may sever defendants' trials "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant."  The Supreme Court has explained that severance is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable

---

[4]      Hr'g Tr. (Dec. 12, 2013) [DI 1454], at 14-15.

[5]      Hr'g Tr. (Sept. 3, 2014), at 13-14.

[6]      *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotation marks omitted).

[7]      *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also United States v. Bin Laden*, 109 F. Supp. 2d 211, 214 n.7 (S.D.N.Y. 2000) ("It is well established that conspiracy allegations, such as the five with which all seventeen Defendants are charged in this case can serve as a 'common link' justifying joinder of Defendants in a single indictment.").

judgment about guilt or innocence."[8]  A defendant seeking a separate trial therefore "carries a heavy burden of showing that joinder will result in substantial prejudice."[9]  Severance is not appropriate merely because defendants "may have a better chance of acquittal in separate trials."[10]

Moreover, Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."[11]  Even where there is a risk of prejudice, "less drastic measures – such as limiting instructions – often suffice as an alternative to granting a Rule 14 severance motion."[12]  Indeed, to succeed on a severance motion, the risk of prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials."[13]

Al Fawwaz and al Liby each argues that severance is warranted because evidence admissible against his co-defendant will cause a prejudicial spillover effect.[14]  Al Fawwaz contends also that "pretrial prejudice arising from media coverage," particularly the publicity surrounding al

---

[8]     *Zafiro*, 506 U.S. at 539.

[9]     *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks omitted).

[10]    *Zafiro*, 506 U.S. at 540.

[11]    *Id*. at 539.

[12]    *United States v. Feyrer*, 333 F.3d 110, 113 (2d Cir. 2003).

[13]    *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998); *accord United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011).

[14]    Al Fawwaz Mem. of Law for Severance and Two Juries [DI 1675], at 4-5; Ltr. from B. Kleinman to Court (Aug. 1, 2014) [DI 1677], at 3-4; Ltr. from B. Kleinman to Court (Dec. 1, 2013) [DI 1386], at 4-7.

Liby's arrest and recent acts of terrorism, requires severance.[15] Finally, al Liby requests severance

due to his medical and health issues.[16] These arguments are discussed in turn.

### 1. *Prejudicial Spillover*

Al Fawwaz and al Liby separately contend that severance is necessary to avoid the

prejudicial impact of evidence that the government will introduce against the other defendant.

Al Fawwaz argues that a joint trial "poses a risk of prejudicial spillover to Al Fawwaz . . . if the

government offers evidence of Al Liby's post-indictment activities and reference to events of

September 11, 2001 and its aftermath."[17] Al Liby claims similarly that he will suffer prejudicial

spillover, absent severance, because "unlike Mr. al Liby, Mr. al Fawwaz is charged with direct

al Qaeda connections, at the highest levels, going back as far as 1993 and continuing on through the

actual Embassy Bombings."[18]

These arguments assume that the government will seek to introduce evidence, in a

joint trial, which is admissible against one defendant but not the other. However, "[w]here a

defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even

---

[15]   DI 1675, at 4; *see also* Ltr. from B. Sternheim to Court (Dec. 2, 2013) [DI 1404].

[16]   DI 1677, at 1; Decl. & Mem. in Support of Def. Mot. for Severance (July 14, 2014)
[DI 1647] (under seal); Mem. of Law in Support of Mot. for Severance (June 18, 2014)
[DI 1637] (under seal).

[17]   Ltr. from B. Sternheim to Court (Aug. 21, 2014) [DI 1698], at 1; *see also* DI 1675 at 4-5.

[18]   DI 1386, at 5; *see also* DI 1677, at 3-4.

evidence relating to acts committed by co-defendants, is admissible against the defendant."[19]  As this Court previously has recognized, evidence is "neither spillover nor prejudicial" where, "because of the alleged conspiratorial nature of the illegal activity, [it] would have been admissible at a separate trial of the moving defendant."[20]

Al Fawwaz and al Liby are charged as co-conspirators in identical offenses. Accordingly, much – if not all – of the evidence admissible against al Liby relating to his alleged participation in these conspiracies is likely to be admissible also against al Fawwaz and vice-versa.[21] To the extent that certain evidence relevant to the crimes with which one defendant has been charged proves inadmissible against the other – and defense counsel have not yet identified any such evidence – an appropriate limiting instruction would suffice as "the almost invariable assumption of the law [is] that jurors follow their instructions."[22]  Accordingly, defendants have not identified a risk of prejudice sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials.

---

[19]     *Salameh*, 152 F.3d at 111.

[20]     *United States v. Al Fawwaz*, 98 Crim. 1023 (LAK), 2013 WL 3111043, at *2 & n.12 (S.D.N.Y. June 20, 2013) (quoting *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993)).

[21]     Moreover, the government will not – as al Fawwaz claims – seek to introduce evidence of unrelated acts of terrorism that occurred after the late 1990s.  *See* Gov't Opp. to Severance and Dual Juries [DI 1688], at 8.

[22]     *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

2.    *Media Coverage*

Al Fawwaz contends also that media coverage of al Liby's 2013 arrest, violence in Nairobi, and other acts or terrorism will result in a "detrimental spillover effect" on him.[23]  While the Court acknowledges that this case has received, and likely will continue to receive, substantial coverage in the media, severance is not warranted in these circumstances.

*First*, al Fawwaz has not even attempted to explain how severance would remedy the news coverage of which he complains.  Even assuming that al Liby's capture "regurgitated coverage of the 1998 embassy bombings,"[24] that would not demonstrate that his presence in a joint trial, as opposed to separate trials, would increase the risk of unfair prejudice to al Fawwaz.   Indeed, much of the media coverage of al Liby's apprehension occurred prior to the Court's December 12, 2013 order of a joint trial.[25]  Accordingly, al Fawwaz has not demonstrated that the "joinder will result in substantial prejudice."[26]

*Second*, the Court has taken several precautions to mitigate the purported risks that al Fawwaz apprehends.   Prospective jurors will complete a questionnaire designed to uncover

---

[23]    DI 1675, at 4.

[24]    *Id*.

[25]    *E.g.,* Benjamin Weiser, *U.S. Asserts Terror Suspect Has Implicated Himself*, N.Y. TIMES, Oct. 23, 2013, *available at* http://www.nytimes.com/2013/10/23/nyregion/ prosecutor-cites-statement-by-terror-suspect.html; David V. Kirkpatrick et al., *U.S. Raids in Libya and Somalia Strike Terror Targets*, N.Y. TIMES, Oct. 5, 2013, *available at* http://www.nytimes.com/2013/10/06/world/africa/Al-Qaeda-Suspect-Wanted -in-US-Said-to-Be-Taken-in-Libya.html?pagewanted=all; *US Capture Libyan al-Qaida Leader Anas al-Lby, Officials Say*, THE GUARDIAN, Oct. 5, 2013, *available at* http://www.theguardian.com/world/2013/oct/06/us-capture-al-qaida-leader-anas-liby-libya.

[26]    *Amato*, 15 F.3d at 237 (internal quotation marks omitted).

potential bias, including whether they have seen, heard, or read anything about Khalid al Fawwaz, Anas al Liby, or the 1998 bombings of the U.S. embassies in Kenya and Tanzania. The Court will conduct oral *voir dire* of prospective jurors who remain, and the parties may request additional examination of the jurors.[27] Additionally, the Court will instruct the jurors not to read, watch or listen to anything having to do with this case. And, as with all trials, it will instruct the jurors to render a verdict based solely on the evidence in the case and the applicable law. "[I]t is a premise of [our justice] system that jurors will set aside their preconceptions when they enter the courtroom and decide cases based on the evidence presented."[28] Accordingly, recent events portrayed in the news will not "prevent the jury from making a reliable judgment about guilt or innocence," and thus severance is not appropriate.[29]

### 3. Al Liby's Medical Condition

Finally, al Liby seeks a severance "premised upon [what his counsel characterizes as] Mr. al Liby's dire, and terminally ill medical condition."[30] The government opposes the motion and argues that al Liby's medical condition does not immunize him from criminal charges.[31]

---

[27] *See* Mem. Op. (Sept. 30, 2014) [DI 1740], at 7.

[28] *Skilling v. United States*, 561 U.S. 358, 399 n.34 (2010).

[29] *Zafiro*, 506 U.S. at 539.

[30] DI 1647, at 1 (under seal).

[31] *See* Ltr. from S. Ritchin to Court (July 2, 2014) (under seal).

The decision to grant severance based on a defendant's medical condition is left to the discretion of the trial court. In *Bernstein v. Travia*,[32] the Second Circuit explained:

> "Whether a defendant's physical condition is so poor as to require a continuance or severance is not only a difficult determination for a judge to make, but it is one which carries with it tremendous responsibility of weighing the invariably unpredictable factor of a defendant's health against the Government's, indeed the public's, legitimate interest in a fair and speedy disposition. Troublesome though it may be, however, that decision, as we have repeatedly held, . . . is one reserved to the sound discretion of the district Judge."[33]

*United States v. Doran*[34] sets forth factors to guide the exercise of that discretion: the (1) "medical evidence and judgments;" (2) "evidence of defendant's activities;" (3) possibility of measures "to minimize the risks to defendant's health in subjecting him to a trial;" (4) "temporary or permanent character of the physical problem, since postponement is a relatively easy, bearable and obvious measure for the case of curable impairments;" and (5) "magnitude and seriousness of the case – *i.e.*, the degree of loss or injury to the public interest deemed to result from delay or total preclusion of a trial."[35]

These, taken together, do not weigh sufficiently in al Liby's favor. The Court has received medical evidence and reports on al Liby's condition on a number of occasions.[36] Al Liby undoubtedly is seriously ill. It is possible that his condition may improve, though the opposite may

---

[32]     495 F.2d 1180 (2d Cir. 1974).

[33]     *Id*. at 1182 (footnote and citations omitted).

[34]     328 F. Supp. 1261 (S.D.N.Y. 1971).

[35]     *Id*. at 1263; *accord United States v. Gambino*, 809 F. Supp. 1061, 1077 (S.D.N.Y. 1992).

[36]     *See, e.g.*, DI 1647, Ex. A (under seal); DI 1637, Exs. A-C (under seal).

be more likely. Moreover, defense counsel represents – and the motion to sever presupposes – that al Liby's condition is both incurable and terminal. In short, severance is unlikely to result in an easy or bearable period of delay. Rather, it may deprive entirely the public of a trial of al Liby on these charges, the magnitude and seriousness of which cannot be overstated. Al Liby is alleged to have been involved in a conspiracy to kill Americans abroad, resulting in the August 1998 bombings of two United States embassies. A fugitive for many years, he was apprehended last year and brought to this Court. The public clearly has an interest in avoiding any additional delay or total preclusion of a trial on these charges. Moreover, nothing about al Liby's medical condition indicates a current inability to stand trial. On September 3, 2014, the Court found al Liby "entirely competent," "alert and[] oriented."[37] On October 15, 2014, al Liby testified at a suppression hearing and again appeared alert, oriented, and articulate. After careful consideration, the Court concludes that medical severance is not appropriate.

## II. *Multiple Juries*

Defendants seek alternatively to empanel multiple juries. Several courts have found that "the use of a dual jury system may very well be a reasonable response to prejudicial joinder."[38] Empaneling two juries, however, is a procedure fraught with complications. Multiples juries "run[]

---

[37]      Hr'g Tr. (Sept. 3, 2014), at 13.

[38]

     *Wilson v. Sirmons*, 536 F.3d 1064, 1099 (10th Cir.), *reh'g en banc granted*, 549 F.3d 1267 (10th Cir. 2008), *opinion reinstated sub nom. Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009); *see also United States v. Gray*, 173 F. Supp. 2d 1, 7 (D.D.C. 2001) (recognizing that a "two-jury trial may comport with the requirements of due process"); *United States v. Lebron-Gonzalez*, 816 F.2d 823, 831 (1st Cir. 1987) (noting that "resort to this measure [of empaneling two juries] was a way of minimizing any prejudice from jointly trying the defendants").

the risk of injecting confusion and uncertainty into the proceedings,"[39] "interrupt[] the flow of trial,"[40] and "require counsel to guard against prejudicial evidence that might be entered against another defendant, drawing the lawyer's attention away from his own client."[41]   As Judge Sand recognized, "if the procedure is to be used at all, it should be in relatively uncomplicated situations which will not require the excessive moving of juries in and out of the courtroom."[42]

Multiple juries are not appropriate here.  As discussed above, defendants have not demonstrated a risk of substantial prejudice from a joint trial sufficient to warrant such a procedure. Additionally, the circumstances of this trial would not accommodate the use of multiple juries.  This case is far from "uncomplicated" due, among other things, to the anticipated length of the trial, the number of witnesses and exhibits, the need to translate the proceedings into Arabic for the defendants, the need for extensive security measures, and the use of an anonymous jury.  The complexity of this case and defendants' failure to offer a persuasive basis justifying such a procedure render the use of a dual jury procedure improper.

In urging otherwise, al Fawwaz contends that there would be an "unavoidable *Bruton* problem, should the government seek to introduce [al Liby's] statements."[43]  "Ordinarily, a witness

---

[39]

*United States v. Lewis*, 716 F.2d 16, 23 (D.C. Cir. 1983) (internal quotation marks omitted).

[40]

*Wilson*, 536 F.3d at 1099.

[41]

*Id*.

[42]

*United States v. Bin Laden*, 109 F. Supp. 2d 211, 215 n.8 (S.D.N.Y. 2000) (internal quotation marks omitted) (rejecting a request to empanel multiple juries), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93 (2d Cir. 2008).

[43]

DI 1675, at 8.

whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant."[44]  *Bruton v. United States*,[45] however, as interpreted by the Supreme Court in *Richardson v. Marsh*,[46] holds that certain "powerfully incriminating extrajudicial statements of a [non-testifying] codefendant" that "'expressly implicat[ed]' the defendant as his accomplice" are so prejudicial that limiting instructions directing the jury not to consider the statements as evidence against the defendant do not suffice to protect the defendant's Confrontation Clause rights.[47]  As the Second Circuit has clarified, "[f]rom *Bruton* to *Richardson* to *Gray* [*v. Maryland*[48]], the Supreme Court's Confrontation Clause concern has been with juries learning that a declarant defendant specifically identified a co-defendant as an accomplice in the charged crime."[49]

       Here, there is no basis for concluding that al Liby ever has made a statement explicitly or impliedly implicating al Fawwaz.  Because *Bruton* concerns arise only where a non-testifying defendant has "directly implicated"[50] his co-defendant, al Fawwaz has identified no

---

44
       *Richardson*, 481 U.S. at 206.

45
       391 U.S. 123 (1968).

46
       481 U.S. 200.

47
       *Id*. at 207-08 (citing *Bruton*, 391 U.S. at 124, 135-36).

48
       523 U.S. 185 (1998).

49
       *United States v. Jass*, 569 F.3d 47, 60 (2d Cir. 2009).

50
       *Gray*, 523 U.S. at 192.

Confrontation Clause problem in the introduction of al Liby's statements at a joint trial. Accordingly, there is no *Bruton* problem to avoid and therefore no reason to empanel multiple juries.

Nor has al Fawwaz provided any reason to believe that multiple juries are necessary because the case "will be tried in a post-9/11 era."[51]  Just as the Court will probe during *voir dire* all prospective jurors' potential exposure to the media coverage of this case, so too will the Court examine their possible bias against defendants accused of terrorism offenses.  Thus, al Fawwaz's request to employ multiple juries amounts to a bare attempt to increase his chance of acquittal.  In such circumstances, such a procedure is unwarranted.[52]

*Conclusion*

Defendants have failed to demonstrate that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment of guilt or innocence.  The Court therefore has denied the motions [DI 1674, 1677] to sever or, in the alternative, to empanel multiple juries.

SO ORDERED.

Dated:        November 25, 2014.

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[51]        DI 1675, at 10.

[52]        *See Zafiro*, 506 U.S. at 539-40.